UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>JAMES H. GALLAHER, III,<br><br>　　　Defendant. | Case No. 3:06-cr-00151-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant James Gallaher's Motion to Vacate the Judgment of Encumbrance and Execution ("Motion"). Dkt. 82. For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

Gallaher is a prisoner serving out a sentence at USP Atwater. In 2007, he pleaded guilty to Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3). Dkt. 41. At sentencing, the Court entered a judgment requiring Gallaher to pay restitution of $11,752. Dkt. 79, at 2. Gallaher later violated the terms of his supervised release and the Court entered another judgment reiterating his restitution obligation and emphasizing that it was "payable immediately." Dkt. 58. When Gallaher was placed on supervised release a

MEMORANDUM DECISION AND ORDER - 1

second time, he again violated his terms, and the Court entered a third judgment. Dkt. 76. The third judgment did not mention Gallaher's restitution obligations.

As of October of 2021, Gallaher had paid $2,543.67 toward restitution, leaving him with an outstanding balance of $9,308.74. At this time, the Government learned that Gallaher was holding a large sum of money—$5,114.05—in his inmate trust fund account. Gallaher asserts that at least part of this money came from his federal stimulus checks. To prevent dissipation of these funds, the Government asked the prison warden to freeze Gallaher's account. The warden complied. The Government then moved the Court to allow the Bureau of Prisons ("Bureau") to withdraw the money and turn it over to the clerk of court as payment toward Gallaher's outstanding restitution obligations. *Id.* Gallaher did not file a timely response.

Upon deliberation, the Court found that the judgment against Gallaher did not contain any statement precluding the immediate or adjusted enforcement of the restitution and set no limit on the size of one-time payments. Dkt. 81. It also found that none of the exceptions to the collection of restitution in 18 U.S.C. § 3613(a) applied. *Id*. at 2. The Court accordingly issued an order authorizing the Bureau to deliver all the funds in Gallaher's account—up to $5,114.05—to the Clerk of the Court and ordered the Clerk to apply those funds toward Gallaher's restitution obligations. The Bureau transferred the funds, and the Clerk disbursed them to Gallaher's victim.

Gallaher now argues that the transfer was an unconstitutional taking because it was not preceded by an evidentiary hearing. He argues that the Court lacked jurisdiction to

issue the order authorizing the transfer. He also argues that the Government, by moving for the order, has committed a laundry list of allegedly sanctionable offenses, including:

> Vexatious and harassing litigation . . . fabrication of facts, improper notice and service of process, and fraud upon the court, conflict of U.S. Government counsel, inter alia—as violative of Petitioner's [rights] guaranteed by the Articles and Amendments of the United States Constitution and Native American Law.

Dkt. 82, at 4 (cleaned up).

As a remedy, Gallaher requests "treble sanctions" against the Government and the Bureau. He also asks for an evidentiary hearing and an order requiring the Government to return the funds withdrawn from his account.

### III. LEGAL STANDARDS

A court may exercise its inherent power to sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," or when the conduct was "tantamount to bad faith." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).

Whether to hold an evidentiary hearing on restitution matters is a decision within the discretion of a trial court. *See United States v. Rice*, 38 F.3d 1536, 1546 (9th Cir. 1994) (holding that a district court did not abuse its discretion by deciding a restitution issue solely on the parties' briefing and affidavits).

If the Government has disbursed restitution to an identifiable victim, the criminal defendant "has no right to recover any such sums from the government." *United States v. Hayes*, 385 F.3d 1226, 1230 (9th Cir. 2004); *United States v. Marshall*, 338 F.3d 990, 995 (9th Cir.2003) (holding that, because of its escrow role in restitution, "the government

MEMORANDUM DECISION AND ORDER - 3

cannot be forced to return property that it never possessed."). Because the Government is acting properly when it disburses restitution funds, it cannot be liable for damages for doing the same. *Hayes*, 385 F.3d at 1226.

## IV. ANALYSIS

Without any established right, Gallaher asks the Court to use its discretion to levy extraordinary sanctions against the Government, schedule a new hearing, and require that the restitution funds disbursed to Gallaher's victim be returned to his prison account. For at least three reasons, the Court denies this relief.

First, the Government has done nothing to warrant sanctions. Under 18 U.S.C. § 3612, the Government has a duty to collect restitution for crime victims. In compliance with that duty, the Government asked the Court for permission to apply the funds in Gallaher's account toward restitution for his victim. By making that request, the Government was not acting in bad faith, vexatiously, wantonly, or for oppressive reasons, but rather was fulfilling its statutory duty. Having reviewed the facts and authority submitted by the Government, the Court finds no evidence of fraud or bad faith. Thus, sanctions of any kind—let alone treble sanctions—are unwarranted.

Second, the Court maintains its decision that an evidentiary hearing is unnecessary. The essential facts are undisputed and the briefing gives enough factual and legal background for an accurate and reasoned decision. Because an evidentiary hearing would not aid in its decision process, the Court again declines to schedule one. Dist. ID. Loc. Civ. R. 7.1(d)(1)(B).

Finally, because the funds have already been disbursed to Gallaher's victim, they

cannot be returned to his account. Gallaher has no right to retrieve the funds from his victim[1] and he cannot extract them from the Government as damages either. *See Hayes*, 385 F.3d at 1226; *Marshall*, 338 F.3d at 995. Neither Ninth Circuit precedent, nor common sense, allow Gallaher to receive *restitution of the restitution* he has already been ordered to pay his victim.

For these reasons, the Court will not grant the relief Gallaher seeks. For the sake of thoroughness, however, the Court will address his remaining legal arguments below.

## A. Due Process and Service

Gallaher erroneously argues that the transfer violated his due process rights. Courts may order cash to be withdrawn from prisoners' trust accounts to satisfy a valid restitution judgment. *See* 18 U.S.C. §§ 3613(c); 3664(n). When a Court orders restitution, that order constitutes a lien in favor of the Government against all of the defendant's property and rights to property. 18 U.S.C. § 3613(c). The Mandatory Victims Restitution Act requires that "substantial resources" received by a defendant from any source during incarceration must be applied to an outstanding restitution obligation. 18 U.S.C. § 3664(n).

Though prisoners have a protected property interest in the funds deposited in their prison accounts, due process is satisfied when a prison removes funds from a prisoner's account to satisfy a valid judgment. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985). In *Quick*, a prisoner in Washington state damaged the personal property of law enforcement

---

[1] The first and most ancient purpose of Anglo-American law is to allow victims to collect restitution from perpetrators—not vice-versa. *See Louisville, E. & St. L. R. Co. v. Clarke*, 152 U.S. 230, 240–41 (1894) (tracing the history of government prosecutions back to the Saxon tradition of "weregild," or "blood money," by which murderers were required to pay the families of their victims).

MEMORANDUM DECISION AND ORDER - 5

officers while trying to escape. *Id.* at 1522. An administrative disciplinary tribunal found him guilty of a major infraction and ordered him to pay reparation to the officers. *Id.* When the prisoner refused, the prison took money out of his prison account and gave it to the officers. *Id.* at 1523–24. Because Washington law allowed courts to order restitution *only after* a criminal conviction for injury to or loss of property, the Ninth Circuit reversed the lower court's grant of summary judgment for the prison and held that the prisoner had alleged a viable due process violation. *Id.* at 1524.

Here, the Court sentenced Gallaher and, as part of its judgment, ordered that he pay restitution to the victim of his crime. The transfer and disbursal of Gallaher's funds was pursuant to that judgment. Unlike *Quick*, where the prison gave the prisoner's funds to officers before there was a hearing and judgment on liability, Gallaher had already pleaded guilty, been sentenced, and had a judgment entered against him requiring him to pay restitution. There was no need for a separate hearing on the transfer because Gallaher was given due process at his sentencing.

Gallaher also implies that he was not properly served with the Government's motion. The record shows that the Government mailed its motion to Gallaher's prison address on or before October 27, 2021—the same day it filed the motion with the Court. Dkt. 79, at 5. Gallaher says that the "Government's pleading at bar" was not mailed to him until December 22, 2021, and was not delivered until December 29, 2021. Dkt. 82, at 3. Because the Court's order granting the Government's motion was mailed on December 22, 2021, the Court wonders whether Gallaher has confused the two. In any event, by mailing its motion to Gallaher's listed address, the Government satisfied the service requirements

in Federal Rule of Civil Procedure 5(b)(2)(C) and District of Idaho Local Civil Rule 7.1(b)(2).

### B. Jurisdiction and the Validity of the Restitution Order

Gallaher also argues that the Court lacked jurisdiction to order the transfer of the funds because, at the time of the order, Gallaher's restitution obligations were no longer in effect.[2] The Court disagrees. "A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that . . . the defendant may be resentenced under section 3565 or 3614." 18 U.S.C. § 3664(o)(2). It is true that the Court issued two judgments after the initial one assigning restitution, and that the third judgment did not mention restitution. Each judgment, however, related to a separate offense, and none invalidated or nullified the first judgment. The initial judgment requiring restitution was therefore operative at all times relevant to this dispute.

Similarly, it does not matter that Gallaher was twice placed on supervised release. Restitution orders do not terminate upon release from prison, nor does the Government waive its authority to enforce restitution judgments by waiting to initiate enforcement. *See* 18 U.S.C. § 3613(b) (providing that liability for judgment-imposed fines terminates 20 years after the judgment is entered—or 20 years after the fined individual is released from prison, whichever comes later—or upon the death of the fined individual, in which case the individual's estate assumes the liability).

---

[2] Gallaher does not raise a cognizable challenge to the Court's personal or subject matter jurisdiction. The Court thus addresses the substance of his argument rather than the way it is styled.

MEMORANDUM DECISION AND ORDER - 7

Gallaher argues that, because his account allegedly contained money from federal stimulus checks, it could not be used to satisfy his restitution obligations. Stimulus checks are not, however, exempt from the collection requirements of § 3664(n). *United States v. Tejera*, No. 21-50208, 2022 WL 17412887, at *1 (9th Cir. Dec. 5, 2022) ("The government provides insufficient evidence that the funds . . . resulted from a Covid stimulus check and *not some other source to which § 3664(n) does not apply*") (emphasis added). The Court has already found that none of the exceptions to the collection of restitution in 18 U.S.C. § 3613(a) apply here. Dkt. 81, at 2. Because stimulus money is not an exception, and no other exceptions apply, this argument fails.

Gallaher cites *United States v. Lillard*, 935 F.3d 827, 830 (9th Cir. 2019), and *Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012) to argue that the Government's interpretation of 18 U.S.C. § 3664(n) is incorrect. Having read these cases, the Court cannot see how they would prevent the transfer from Gallaher's account. Both cases are distinguishable from his situation. Unlike the plaintiff in *Lillard*, who was in pretrial detention when the government seized funds from his inmate trust account, Gallaher was sentenced and incarcerated at the time of the transfer. Unlike the plaintiff in *Ward*, whose restitution order did not set a minimum payment, Gallaher's restitution order set a minimum—but not a maximum—payment.

Gallaher also argues that "[r]estitution payments are tolled while [Gallaher] is jailed or reimprisoned after revocation of supervised release." Dkt. 82, at 3. For this proposition, he cites *Mont v. United States*, 139 S. Ct. 1826, 1835 (2019). The Supreme Court in *Mont* made no such holding. Rather, in dictum, Justice Thomas listed restitution payments as one

condition of supervised release that a defendant in custody will not practically be able to comply with. *Id.* The Court does not read this statement to nullify 18 U.S.C. § 3664(n), which requires that any substantial resources received by a person *during incarceration* be applied toward restitution. The situation covered in § 3664(n), where an incarcerated person receives a financial windfall, is logically distinct from the situation of making regularly scheduled restitution payments from prison wages. Even if the regular payments were tolled, the § 3664(n) payments would not be.

Further, the statute of limitations for restitution, which is 20 years, has not yet run. *See* 18 U.S.C. § 3613(b). Nor does it matter whether Gallaher's victim's rights were assigned to a health clinic. 18 U.S.C. § 3664(g)(2) (providing that the assignment of rights does not affect a defendant's obligation to pay restitution). Finally, it does not create a conflict of interest for the Government to collect restitution on victims' behalf. 18 U.S.C. § 3612 (requiring the Government to collect such restitution).

The bottom line is that the Government acted in accordance with its statutory duty when it requested that the money be transferred from Gallaher's account, and that the transfer did not violate any of Gallaher's rights.

## V. CONCLUSION

Because none of Gallaher's rights have been violated and the Government was acting within its authority, Gallaher's Motion is DENIED.

///

///

///

MEMORANDUM DECISION AND ORDER - 9

## VI. ORDER

The Court **HEREBY ORDERS**:

1.  Gallaher's Motion to Vacate the Judgment of Encumbrance and Execution (Dkt. 82) is **DENIED**.

DATED: May 2, 2023

David C. Nye
Chief U.S. District Court Judge